Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Thomas Segal (SBN 222791)
    thomas@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Ste. 907
Beverly Hills, California 90212
Tel:    (310) 888-7771
Fax:    (310) 888-0109

Attorneys for Plaintiff,
ALYSSA BURNTHORNE-MARTINEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYSSA BURNTHORNE-MARTINEZ, an individual on behalf of herself, all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>SEPHORA USA, INC., a Delaware Corporation; and DOES 1 to 100, Inclusive.<br><br>        Defendants. | Case No. 4:16-cv-02843-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; FOR AN AWARD OF ATTORNEY FEES AND EXPENSES, SETTLEMENT ADMINISTRATOR PAYMENT AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>_**Hearing Information**_<br>Date:      April 24, 2018<br>Time:      2:00 p.m.<br>Courtroom:  1<br>Judge:     Hon. Yvonne Gonzales Rogers<br><br><br>_**Submitted Under Separate Cover**_<br>1.  Declaration of Shaun Setareh;<br>2.  [Proposed] Order |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE on April 24, 2018 at 2:00 p.m., in Courtroom 1 of the above-captioned Court, located at 1301 Clay Street, Oakland, California 94612, the Honorable Yvonne Gonzales Rogers presiding, Plaintiff Alyssa Burnthorne-Martinez ("Plaintiff"), on behalf of herself and all others similarly situated, will, and hereby does, move this Court to:

(1) Finally approve the Settlement;

(2) Finally approve certification of the Settlement Class;

(3)  Award attorney fees in the amount of $250,000;

(4) Award litigation expenses in the amount of $20,000;

(5)  Award Settlement Administrator expenses in the amount of $32,625;

(6)  Award Plaintiff Alyssa Burnthorne-Martinez an incentive award in the amount of $2500.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Shaun Setareh; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement, including Postcard Notice; (6) the [Proposed] Order (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Respectfully submitted,

SETAREH LAW GROUP

BY  /s/ Shaun Setareh

Shaun Setareh

Attorneys for Plaintiff

ALYSSA BURNTHORNE-MARTINEZ

Dated:  March 12, 2018

<u>TABLE OF CONTENTS</u>

I.      INTRODUCTION…………………………………………………………………1

II.     BACKGROUND………………………………………………………...…………2

        A.      Overview of the Litigation……………………………………………………2

        B.      Plaintiff's Investigation and Discovery………………………………………3

        C.      Major Law and Motion Filings in Case………………………….……………4

        D.      The Parties Engaged in Arm's Length Settlement Negotiations………………4

        E.      Material Terms of the Proposed Class Action Settlement………………..………5

                1.      The Settlement Class…………………………………………………5

                2.      The Settlement Benefits…………………………………...…………5

                3.      A Narrow Release…………………………………………...……..6

                4.      A Consumer-Friendly Claims Process…………………………………7

                5.      Notice to the Settlement Class and the Class Reponse……………….....7

                6.      No Reversion to Defendant…………………………….…………..7

III.    ARGUMENT……………………………………………………...…………7

        A.      The Court Should Grant Final Approval of The Class Settlement………...……7

                1.      The Standard for Final Approval Has Been Met………………………..7

                2.      The Standard Is Reasonable in Light of the Strengths and Weaknesses of Plaintiff's Case ……………………………………………………8

                3.      The Risk, Expense and Complexity of The Case, Including the Risk of Decertification, Favor Approval of the Settlement………………….……..11

                4.      The Amount Offered in Settlement Supports Approval…………..……12

                5.      The Settlement Was Finalized After a Thorough Investigation……..….13

6.      The Views of Experienced Counsel Should Be Accorded Substantial

Weight……………………………………………………….…..14

B.      Conditional Class Certifaction Is Appropriate for Settlement Puposes……...……14

C.      The Court Should Award the Requested Attorney Fees, Expenses, Settlement

Administrator Expenses and Class Representative Service Award………………14

1.      The Requested Fee Award is Reasonable………………………………..15

a. Applicable Law Regarding Attorneys's Fees…………………………15

i.      The Court Should Award Attorneys' Fees in Amount of One Third

of the Common Fund……………………………………..………17

ii.      A Lodestar Analysis Also Supports the Requested Fee………….18

2.      Plaintiff's Litigation Expenses Should be Reimbursed……………..…..20

3.      The Settlement Administrator's Expenses Should be Approved………...21

4.      The Court Should Approve an Incentive Award in the Amount of

$2,500.00……………………………...…………………………...…..….21

IV.      CONCLUSION………………………………………………………….……21

## TABLE OF AUTHORITIES

*Apple Inc. Secs. Litig.*,

No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011)………19

*Aremissoft Corp. Sec. Litig.*,

210 F.R.D. 109, 134–35 (D.N.J. 2002)……………………………………………………..20

*Bateman v. Am. Multi-Cinema, Inc.*,

623 F.3d 708, 723 (9th Cir. 2010)……………………………………………………….11

*Barbosa v. Cargill Meat Solutions, Inc.*,

297 F.R.D. 34, 454 (E.D Cal/ 2013)………………………………………………………...18

*Beaver v. Tarsadia Hotels,*

No. 11-cv-01842-GPC-KSC, 2017 WL 4310707…………………………………...……18

*Bellinghausen v. Tractor Supply Co.*

306 F.R.D. 245, 264 (N.D. Cal. 2014)……………………………………..……………19

*Bluetooth Headset Prods. Liab. Litig.*,

654 F.3d 935, 941 (9th Cir. 2011.)…………………………………………………….……15

*Boyd v. Bechtel Corp.*,

485 F. Supp. 610, 624 (N.D. Cal. 1979)……………………………………………………13

*Boyd v. Bank of Am. Corp.*,

No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014)………..……17

*Churchill Village v. Gen. Elec.*,

361 F.3d 566, 575 (9th Cir. 2004)……………………………………………………...…..8

*City of Burlington v. Dague,*

505 U.S. 557, 562 (1992)………………………………………………………...…..16

*Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.,*

No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014)………….…………19

*Deaver v. Compass Bank,*

No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015)……………...……17

*Di Giacomo v. Plains All Am. Pipeline,*

*Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001)…...……20

*Franklin v. Kaypro,*

884 F.2d 1222, 1225 (9th Cir. 1989)……………………………………………………………8

*Frank v. Estman Kodak Co.,*

288 F.R.D. 174, 186 (W.D.N.Y. 2005)…………………………………………...…………13

*Graham v. DaimlerChrysler Corp.,*

34 Cal. 4th 553, 580 (2004)…………………………………………………...………..18

*Eisen v. Porsche Cars North American, Inc.,*

Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13……...……13,14

*Hanlon v. Chrysler Corp.,*

150 F.3d 1011, 1027 (9th Cir. 1998)……………………………………………………...8

*Heritage Bond Litig.,*

No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005)…….16,18

*Holloway v. Best Buy Co.,*

C-05-5056-PJH (MEJ) (N.D. Cal.)…………………………………………………………19

*Hopkins v. Stryker Sales Corp.,*

No. 11-CV-02786- LHK, 2013 WL 496358, at *5…………………………………………19

iv

*HP Laser Printer Litig.,*

2011 WL 3861703 at 5–6 (C.D. Cal. filed Aug. 31, 2011)……………………………………19

*Indus and Laborers Health and Welfare Trust v. Redland Ins. Co.,*

460 F.3d 1253, 1258 (9th Cir. 2006.)…………………………………………………………..20

*Johnson v. General Mills, Inc.,*

2013 WL 3213832 *6 (C.D. Cal. 2013.)………………………………….…………………20

*Kearney v. American Honda Motor Am.*

2013 U.S. Dist. LEXIS 91636  *24…………………………………………..……...19

*Lane v. Facebook, Inc.,*

No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010)……...………11

*LDK Solar Secs. Litig.,*

2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010)…………………………………….…12

*Lee v. JPMorgan Chase & Co.,*

Case No. 13-cv-511- JLS, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015)…………..17

*Leland v. Lagos Stanford Junior University,*

2017 WL 113302 *4 (N.D. Cal. 2017.)……………………………………………………..12

*Linney v. Cellular Alaska P'ship,*

151 F.3d 1234, 1242 (9th Cir. 1998)…………………………………………….…13

*London v. Wal-Mart Stores, Inc.,*

340 F.3d1246, 1255 n.5 (11th Cir. 2003)……………………………...…………………10

*Long v Tommy Hilfiger U.S.A.,*

671 F.3d 371(3d Cir. 2012)……………………………………………….……..9

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.,*

221 F.R.D. 523, 525-526 (C.D. Cal. 2004)…………………………………..………8,12

*Maley v. Del Global Techs. Corp.,*

186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002)…………………………………..……….20

*Miller v. CEVA Logistics USA Inc.,*

2015 WL 729638, *7 (N.D. Cal. 2015)………………………….………………….12

*Milliron v. T-Mobile USA, Inc.,*

423 F. App'x 131, 135 (3d Cir. 2011)……………………….…………………..20

*Officers for Justice v. Civil Serv. Comm'n,*

688 F.2d 615, 625 (9th Cir. 1982)……………………………………………….9

*Pac. Enters. Sec. Litig.,*

47 F.3d 373, 378 (9th Cir. 1995)………………………………………..………14

*Paul, Johnson, Alston & Hunt v. Graulty,*

886 F.2d 268, 271 (9th Cir. 1989)…………………………………….……….15

*Perfect 10 v. Giganews Inc.,*

2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015)……………………………..……..19

*Pierce v. County of Orange,*

905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012)v………………………………..19

*Portal Software Inc. Sec. Litig.,*

No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007)……..…12

*RadioShack Corp.,*

No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16 (N.D. Cal. Aug. 9, 2010)……………19

*Rodriguez v. West Pub. Corp.*,

563 F.3d 948, 965 (9th Cir. 2009)…………………………….…………………9,11,12

*Rohm v. Thumbtack, Inc.*,

2017 WL 4642409 (N.D. Cal. 2017)……………………...…………………………1,17

*Serna v. Big A Drug Stores, Inc.*,

No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007)…………..…10

*Shlahtichman v 1-800 Contacts, Inc.*,

615 F.3d 794 (7th Cir. 2010)…………………………………………..…………9

*Safeco Ins. Co. of Am. v. Burr*,

551 U.S. 47, 57-59 (2007)…………………………………………………………9

*Sobel v. Hertz Corp.*, No.

306-CV-00545-LRH-RAM, 2014 WL 5063397, at *10 (D. Nev. Oct. 9, 2014)…………..…20

*Staton v. Boeing Co.*,

327 F.3d 938, 967 (9th Cir. 2003.)……………………………………………………15

*Stovall-Gusman v. W.W. Granger, Inc.*,

2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015)……………………..……….12

*TFT-LCD (Flat Panel) Antitrust Litig.*,

2013 WL 1365900, at *9……………………………………………………….....19

*Torres v. Pet Extreme*,

No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015)……..…..10,11

*Torrisi v. Tuscson Elec.*,

8 F.3d 1370, 1376 (9th Cir. 1993)………………………...……………………………8

*Toys 'R' Us-Del., Inc. FACTA Litig.*,

295 F.R.D. 438, 451 (C.D. Cal. 2014)……………………….…………………………10,11,12

*Uber FCRA Litigation*,

2017 WL 2806698 (N.D. Cal. 2017)……………………...………………………………1,17

*Vasquez v. Coast Valley Roofing, Inc.*,

266 F.R.D. 482, 489 (E.D. Cal. 2010)……………………...………………………………12

*Vizcaino v. Microsoft Corp.*,

290 F.3d 1043, 1050 (9th Cir. 2002)…………………………………………………...15

*Wang v. Chinese Daily News, Inc.*,

2008 U.S. Dist. LEXIS 123824 at 8–9 (C.D. Cal. filed Oct. 3, 2008)……………….…………...…….19

*Washington Pub. Power Supply Sys. Sec. Litig.*,

19 F.3d at 1299……………………………………………………………..…………...18

*Willes v State Farm Fire & Cas. Co.*,

512 F.3d 565, 566 (9th Cir. 2008)…………………………………………..…………..9

**STATUES:**

15 U.S.C. §1681………………………………………………………………..9, 10

Fed. R. Civ. P. 23……………………………………………………………..7,8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Settlement Agreement which the Court granted preliminary approval to resolves Plaintiff's claims that Sephora violated the Fair Credit Reporting Act ("FCRA"). Plaintiff alleges that Sephora obtained pre-employment credit checks failed to provide applicants with a stand-alone disclosure document that consists *solely* of the disclosure, as required under the law. Instead, Plaintiff alleges that the disclosure form included impermissible extraneous information, thereby violating the FCRA.

Notice has gone out to the Settlement Class in this case, and to date there are no objections or requests for exclusion. The Settlement provides for a non-reversionary fund of $750,000. Class members do not have to make claims but instead will be mailed checks directly. The funds from any checks which are not cashed will not revert to the Defendant but instead will go to an appropriate *cypres* recipient.

Assuming a willful violation is proven, the FCRA provides for statutory damages of between $100 to $1000 per violation. In this settlement the gross amount per class member is $65.62. This compares favorably to other recent FCRA settlements in the Northern District. For example, in the two most recent FCRA settlements in the Northern District (involving similar allegations of defective FCRA disclosure forms) the gross settlement amount(s) per class member were $3.30 per class member in one case and $7.31 per class member in the other. *Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval); *In re Uber FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. 2017)(granting preliminary approval).

Plaintiff also requests that the Court approve an award of attorney fees in the amount of $250,000 which is one third of the $750,000 Settlement Fund and is only a modest multiplier of Class Counsel's lodestar of $194,535. (Setareh Decl. ¶ 27.) Plaintiff also requests that the Court approve litigation expenses in the amount of $20,000. (Setareh Decl. ¶ 28.) Plaintiff also requests that the Court approve the Settlement Administrator's expenses in the amount of

$32,625.  (Pikus Decl. ¶ 15.)Plaintiff also requests that the Court approve an incentive award in the amount of $2,500. (Burnthorne-Martinez Decl. ¶¶ 7-8_.)

The Court granted preliminary approval on January 8, 2018. (ECF No. 94.) Plaintiff now request final approval of the Settlement. The Settlement not only was negotiated with an experience mediator, it was entered into with the parties fully cognizant of the risks of the case. Plaintiff's Motion for Class Certification and Defendant's Motion for Summary Judgment which fully analyzed the applicable law, the evidence, the merits and class certification issues were fully briefed when the parties mediated the case.

In light of the risks of continuing with this litigation, Plaintiff submits that this settlement, which guarantees that all Settlement Class Members will be paid, is fair, reasonable, and adequate and should be approved.

## II.   BACKGROUND.

### A.  Overview of the Litigation

On April 22, 2016, Plaintiff filed a class action lawsuit alleging violations of the Fair Credit Reporting Act and related California law claims. (Setareh Decl. ¶ 2.) Plaintiff's employment application form stated:

> I certify that the facts set forth in this application for employment are true and complete. I understand that false statements or omissions on this application will result in a refusal to hire or, if discovered after I am hired, in disciplinary action up to and including the termination of my employment. I hereby grant permission to any person, firm or corporation to release to Sephora or its representatives any and all information regarding my past work or employment and my background. I waive any and all claims I might have with respect to the providing of such information.

> In connection with my application for employment (including contract for service) with Sephora USA, Inc. ("the Company"), I understand that investigative inquiries may be obtained on me by a consumer reporting agency, and that any such report will be used solely for employment-related purposes. I understand that the nature and scope of this investigation will include a number of sources including, but not limited to, consumer credit, criminal convictions, sex offender registries and public databases, motor vehicle, and other reports. These reports will include information as to my character, general reputation, personal characteristics, mode of living, and work habits. Information relating to my performance and experience, along with reasons for termination of past

employment from previous employers, may also be obtained. Further, I understand that the Company will be requesting information from various Federal, State, County, and other agencies that maintain records concerning my past activities relating to my+ driving, credit, criminal, civil, education, and other experiences.

I understand that if the Company hires me, it may request a consumer report or an investigative consumer report about me for employment-related purposes during the course of my employment. I understand that the scope of this investigation will be the same as the scope of a pre-employment investigation, and that the nature of such an investigation will be my continuing suitability for employment, or whether I possess the minimum qualifications necessary for promotion or transfer to another position. I understand that my consent will apply throughout my employment, unless I revoke or cancel my consent by sending a signed letter or statement to the Company at any time, stating that I revoke my consent and no longer allow the Company to obtain consumer or investigative consumer reports about me. This signed Disclosure and Consent form, whether in original, faxed, photocopied or electronic form, will be valid for any reports that may be requested by the Company.

Plaintiff alleges that Sephora violated the FCRA because it failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under the law. Instead, the disclosure form includes impermissible extraneous information, in direct contravention of the law.  Such extraneous information includes state law notices unrelated to the state of the employment applicant. In addition, the employment application contained an impermissible release of liability which contravenes the aforementioned statutes as well as long-standing Federal Trade Commission ("FTC") guidance regarding compliance with the FCRA.

**B.      Plaintiff's Investigation and Discovery**

Prior to and throughout the action, Plaintiff and her counsel thoroughly investigated her claims. Plaintiff propounded Interrogatories, Requests for Production of Documents, and deposed Defendant's Person Most Knowledgeable, Lisa Murphy.  (Setareh Decl. ¶ 8.)

As part of the investigation, Plaintiff's counsel reviewed many documents produced by Sephora in order to confirm which forms were used and by whom during the class period. Plaintiff's counsel also reviewed Sephora's background check policies, record retention policies, and the actual background check disclosure and authorization forms for class members who applied for employment at Sephora during the class period. (Setareh Decl. ¶ 6.)  Because

this case turns on Sephora's legal defense that Sephora's noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes such as FACTA. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly unlawful forms. (Setareh Decl. ¶ 7.)

C.     **Major Law and Motion Filings in Case**

On October 11, 2016, Sephora filed a motion for partial judgment on the pleadings. (ECF No. 21). On The Court denied Defendant's motion for partial judgment on the pleadings on November 23, 2016. (ECF No. 31).

On February 21, 2017, Plaintiff filed her motion for class certification. (ECF No. 48).

On February 21, 2017, Sephora filed its motion for summary judgment, or in the alternative, partial summary judgment. (ECF No. 49).

Plaintiff filed her opposition to the motion for summary judgment on March 7, 2017. (ECF No. 54).

Sephora filed its opposition to the motion for class certification on March 7, 2017. (ECF No. 56).

Plaintiff and Sephora filed their replies regarding the motion for summary judgment and the motion for class certification on March 14, 2017. (ECF Nos. 60-61).

Following the full briefing of the motion for summary judgment and the motion for class certification, and after consultation with the Court's ADR Coordinator, the parties agreed to pursue private mediation.

D.  **The Parties Engaged in Arm's-Length Settlement Negotiations**

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  Following formal discovery, informal discovery and arm's-length negotiations, the Parties reached a settlement in principle on a class basis. The essential terms of the agreement were memorialized and all terms

were subsequently finalized and reduced to this Agreement.  (Setareh Decl. ¶¶ 10, 11; Exhibit A.)

### E.  Material Terms of the Proposed Class Action Settlement

#### 1.  The Settlement Class

Settlement Class Members consist of all individuals who both: (a) applied for a retail store position in the United States with Sephora USA, Inc. ("Sephora") for whom Sephora requested a background check report from Accurate Background and (b) for whom a background check report was subsequently generated by Accurate Background for Sephora at any time between April 22, 2011 and the Preliminary Approval Date, inclusive. (Settlement Agreement ¶ 1.6).

#### 2.  The Settlement Benefits

Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will receive a settlement check payment. The amount of the Settlement Benefit each Settlement Class Member will receive will be determined on a *pro rata* basis, based on the total amount of the Net Settlement Fund to be allocated among all Settlement Class Members and the total number of Settlement Class Members, as follows:

Each Settlement Class Member will receive one (1) *pro rata* share of the Net Settlement Fund for each background check that was requested by Sephora and was generated by Accurate Background on him/her between April 22, 2011 and April 21, 2014 (inclusive), if that background check was generated at a time when neither her address nor the address of the store to which she was applying was in California.

Each Settlement Class Member will receive two (2) *pro rata* shares of the Net Settlement Fund for each background check that was requested by Sephora and was generated by Accurate Background on him/her between April 22, 2014 and the Preliminary Approval Date (inclusive), if that background check was generated at a time when neither her address nor the address of the store to which she was applying was in California.

Each Settlement Class Member shall receive 1.15 *pro rata* shares of the Net Settlement Fund for each background check was requested by Sephora and was generated by Accurate Background on him/her between April 22, 2011 and April 21, 2014 (inclusive), if that background check was generated at a time when either her address or the address of the store to

which she was applying was in California, given the presence of California state law claims in addition to federal Fair Credit Reporting Act claims in the Complaint.

Each Settlement Class Member shall receive 2.3 *pro rata* shares of the Net Settlement Fund for each background check was requested by Sephora and was generated by Accurate Background on him/her between April 22, 2014 and the Preliminary Approval Date (inclusive), if that background check was generated at a time when either her address or the address of the store to which she was applying was in California, given the presence of California state law claims in addition to federal Fair Credit Reporting Act claims in the Complaint.

(Settlement Agreement ¶ 3.1 – 3.1.2.4).

This approach is fair, as it provides class members with state law claims with a larger portion of the settlement amount. It also provides a large settlement share to class members whose claims are within the two year FCRA statute of limitations dating from the occurrence of the violation, rather than the five year statute dating from the discovery of the violation. 15 U.S.C. § 1681p. This approach guarantees a fair payment to everyone in the class.

### 3. A Narrow Release

In exchange for the benefits and for other good and valuable consideration, Settlement Class Members who have not timely and properly opted out of the settlement will fully and forever release, waive, and discharge Sephora of the following:

all claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*; all claims under the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal Civ. Code § 1785.1 *et seq.*; all claims under the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1780 *et seq.*; and all claims or causes of action that are pled in or reasonably related to claims and potential claims in the Litigation, including but not limited to any and all claims related to or arising out of any background check requested or procured by Defendant or the disclosures or other documentation provided (or not provided) to any Settlement Class Member in connection with any such background check (the "Settlement Class Released Claims").

(Settlement Agreement ¶ 7.1.)

This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint.

6

### 4.  A Consumer- Friendly Claims Process

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members.  All payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail.  The Claims administrator will also maintain a website for the case which will include documents such as: (a) Plaintiff's motion for preliminary approval, (b) the Court-approved Class Notice, (c) the Court-approved Request for Exclusion and (d) Plaintiff's motion for attorney's fees, costs, and enhancement award. (Settlement Agreement ¶ 4.4.)

### 5.  Notice to the Settlement Class and the Class Response

On February 9, 2018 the Settlement Administrator mailed notice to the Settlement Class Members. (Pikus Decl. ¶ 10.) To date, no Class Members have opted out of the litigation and there have been zero objections. (Pikus Decl. ¶¶ 13, 14.)

### 6.  No Reversion to Defendant

None of the $750,000 settlement fund will revert to the Defendant. Settlement Class Members will have 180 days from date of issuance to cash their settlement checks. The funds from any uncashed checks will be delivered to the Lawyers' Committee for Civil Rights of the San Francisco Bay Area or another 501(c)(3) non-profit to be approved by the Court. Settlement Agreement ¶ 3.2.


## III.    ARGUMENT

### A.    The Court Should Grant Final Approval of the Class Settlement

#### 1. The Standard for  Final Approval Has Been Met

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude

themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This reflects the longstanding policy in favor of encouraging settlement of class action suits, as "[l]itigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement: the extent of discovery completed and the stage of proceedings; the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; and the experience and views of counsel. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing *Torrisi v. Tuscson Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

## 2.     The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). In assessing the strength of the plaintiff's case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross

approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).  There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Because Plaintiff's Motion for Class Certification and Defendant's Motion for Summary Judgment were fully briefed, the parties are well apprised of the strengths and deficiencies of the claims. Here, Plaintiff alleges that Sephora used employment application forms that included both the disclosure form and a release of liability in one document. Plaintiff contends that Sephora' use of this document in employment applications facially violates the FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) ***a clear and conspicuous disclosure has been made in writing*** to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there.  Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See, e.g.*, *Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010)

(holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

Here, Defendant argued in its motion for summary judgment that Plaintiff had not sufficiently shown a willful or negligent breach of the FCRA. (ECF No. 49, pages 6-7). Defendant argued in its motion for summary judgment that willfulness cannot be proved under *Syed* because the disclosure form in *Syed* was a single piece of paper, while the disclosure forms at issue here are actually two separate documents. (ECF No. 49, pages 12-13.) In contrast, Plaintiff sees the disclosures forms at issue as a single document, and notes that even if the forms are viewed separately, they violate *Syed* as both forms contain "terms in addition to the disclosure." (ECF No. 48, page 8; ECF No. 60, pages 4-5). By fully briefing the motion for summary judgment, the parties were able to address the strengths and weaknesses of Plaintiff's claims.

The availability of these defenses to Sephora, coupled with Plaintiff's burden to show that Sephora engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness[under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

Some courts have refused to grant class certification for cases seeking statutory penalties on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc.*, 340 F.3d

1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail. *See Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708, 723 (9th Cir. 2010).

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3.      The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given that Sephora would argue that class members incurred no actual damages. *Toys 'R' Us FACTA Litig*., 295 F.R.D. at 451. On the other hand, Sephora faces catastrophic liability if Plaintiff prevails entirely. This type of "all-or-nothing prospect weighs in favor of approval." *Id*. at 452.

Furthermore, only recently was there substantial litigation on the FCRA, and litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. *See Torres v. Pet Extreme,*  2015 U.S. Dist. LEXIS 5136, at *14 (E.D. Cal. 2015) (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement. *Id*. And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc*., No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after

protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the settlement).

### 4.   The Amount Offered in Settlement Supports Approval

Defendant is paying a total settlement amount of $750,000.  The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded.  *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake, as the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. With 11,429 class members, the FCRA damages i.e., the core claim in the Action, are between $1,142,900 to $11,142,900. A recent decision from the Northern District used the $100 per violation penalty as the comparator for determining the fairness of an FCRA settlement. *Leland v. Lagos Stanford Junior University*, 2017 WL 113302 *4 (N.D. Cal. 2017.) Here, the $750,000 non-reversionary settlement amount is 65.6% of the amount that would be awarded if the jury awarded a $100 penalty per violation.

In Plaintiff's view, this is a favorable result, and above the amount of many settlements granted final approval by courts within the Ninth Circuit.  *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S.

Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").  Importantly, the reasonableness of a settlement is not dependent upon the amount approaching the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele. Coop.*, 221 F.R.D. at 527.  Indeed, compromise is the very nature of settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979).  Moreover, courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a proposed settlement, a range which recognizes the uncertainties of law and fact and attendant risks and costs associated with taking any litigation to completion. *See Frank v. Estman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

### 5.   The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney v. Cellular Alaska Partnership,* (9th Cir. 1998), 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in extensive investigation and discovery. (*See* Setareh Decl ¶¶ 5-9.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant

delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Sephora.

**6.     The Views of Experienced Counsel Should Be Accorded  Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses.  The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations.

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters. (*See* Setareh Decl. ¶¶ 16-17.) Likewise, Sephora's counsel, Orrick, Herrington & Sutcliffe, LLP is a nationally recognized defense firm. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

Based on the satisfaction of the *Churchill* factors, the Court should find the proposed Settlement to be fair and adequate.

**B.     Conditional Class Certification Is Appropriate for Settlement Purposes**

On January 8, 2018 the Court granted conditional certification of the settlement class. No intervening case law or events provide a basis for disturbing that conclusion.

**C.     The Court Should Award The Requested Attorney Fees, Expenses, Settlement Administrator Expenses and Class Representative Service  Award**

///

**1.      The Requested Fee Award Is Reasonable.**

**a) Applicable Law Regarding Attorneys' Fees.**

District courts may award attorneys' fees and costs to a prevailing plaintiff where "(1) fee shifting is expressly authorized by the governing statutes; (2) the [defendant] acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011.) In the class action context, courts generally award attorneys' fees and costs pursuant to the common fund or statutory fee-shifting methodologies. *In re Bluetooth*, 654 F.3d at 941.

 Where there is a common fund, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Bluetooth*, 654 F.3d at 942.  The Ninth Circuit has consistently awarded attorneys' fees under the common fund method, because "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003.)  "The common fund doctrine is properly applied, however, only if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lumpsum [settlement] recovered on his behalf." *Id*.

The Ninth Circuit has set a benchmark of 25% of the common fund. Courts award more than the benchmark when justified, considering the following factors: (1) the results achieved; (2) the risk of litigation; (3) any non-monetary benefits produced by the settlement; (4) the range of fee awards in common fund cases of comparable size; and (5) the financial burden assumed by Class Counsel, including contingent risk. *See Vizcaino*, 290 F.3d at 1048-50. In the settlement approval context, the reaction of settlement class members to the requested fee should also be

considered. *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005) ("absence of objections from the class is also a factor in determining the proper fee award"). Although the "usual range" of common fund awards is 20-30%, court regularly award 33.3% or more for cases like this one. *Vizcaino*, 290 F.3d at 1047-50

While not required, courts may "cross-check" the percentage of the common fund against the lodestar to ensure reasonableness of the fee award. *Vizcaino,* 290 F.3d at 1050 ("The district court applied the lodestar method as a cross-check of the percentage method. Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The lodestar figure is determined by multiplying the number of hours reasonably expended on the litigation by hourly rates. *In re Bluetooth*, 654 F.3d at 941. The lodestar figure is only the starting point for determining an appropriate fee. Id.; *Staton,* 327 F.3d at 965; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). A court may reduce or enhance the lodestar figure based on several "reasonableness" factors, including the following: (1) the quality of the representation; (2) the benefit obtained for the class; (3) the complexity and novelty of the issues presented; and (4) the risk of non-payment. *In re Bluetooth*, 654 F.3d at 942. The proposed settlement herein creates a common fund of $750,000. Each settlement class member who cashes the check mailed to them will receive an ascertainable, pro-rata share of the settlement fund.  No money will revert to Sephora. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul*, 886 F.2d at 271 (internal citation omitted).

Plaintiffs seek a common fund award of $250,000, which amounts to one-third of the $750,000 Settlement Fund. As discussed below, this upward adjustment of the benchmark recovery is well supported by the factors set forth by the Ninth Circuit, including: (1) the results achieved; (2) the risk of continued litigation; (3) whether there are benefits to the class beyond the creation of a common fund; (4) the range of fee awards in common fund cases of comparable size; (5) and the financial burden assumed by class counsel, including contingent risk; (6) the reaction of the settlement class; and (7) a lodestar crosscheck. *See Vizcaino*, 290 F.3d at 1048-50;

16

*Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *4 (N.D. Cal. Aug. 2, 2013).

### i) The Court Should Award Attorneys' Fees in the Amount of One Third of the Common Fund.

The *Vizcaino* factors support an award in the amount of one third of the common fund. First the results achieved are excellent comparing favorably to other recent FCRA cases in the Northern District. The gross settlement amount is $65.62 per class member. Class members will not have to submit a claim form but will be mailed checks directly. By contrast, *Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement or a gross recovery of $3.30 per class member. Similarly, *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or a gross recovery of $7.31 per class member.

Second the risks of the litigation, including the high uncertainty regarding the law concerning the FCRA and the risk that if Sephora's conduct was found not to be willful class members would recover nothing, support an upward adjustment. *See Deaver v. Compass Bank*, No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding 33% of common fund and concluding that "[g]iven the significant challenges Plaintiff would have faced in maintaining this litigation through class certification and trial, the results achieved in this case are very favorable."); *Boyd v. Bank of Am. Corp*., No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one third of common fund based on significant risk of continued litigation where settlement provided only 36% of potential damages.)

Third, fee awards in cases of comparable size also support an upward adjustment of the benchmark. For example, in the following cases a one third fee was awarded. *Deaver*, 2015 WL 8526982, at *11 (awarding one-third of $500,000 common fund));; *Lee v. JPMorgan Chase &*

*Co.,* Case No. 13-cv-511- JLS, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (awarding 33% of $2.4 million common fund); *Burden,* 2013 WL 3988771, at *5 (33% of $750,000 common fund*); Barbosa v. Cargill Meat Solutions, Inc*., 297 F.R.D. 34, 454 (E.D Cal/ 2013) (awarding 33% of $1,290,000 common fund).

Fourth, the contingent nature of the litigation supports the requested fee. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d at 1299. By undertaking a class action on a contingency fee basis, counsel not only must turn away other income generating opportunities but must take on the risk of never receiving compensation at all. *Beaver v. Tarsadia Hotels,* No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017). A contingent fee must be higher than a fee for the same legal services paid as they are performed because it "compensates the lawyer not only for the legal services he renders but for the loan of those services." *Id*. (quoting *Graham v. DaimlerChrysler Corp*., 34 Cal. 4th 553, 580 (2004)). Here, Class Counsel represented Plaintiff and the Settlement Class on a contingency fee basis, with no guarantee of payment. Setareh Decl. ¶ 28.

Fifth, the reaction of the Settlement Class supports the requested fee. To dates there are no objections and no requests for exclusion. *In re Heritage Bond Litig*., 2005 WL 1594389, at *15 ("absence of objections from the class is also a factor in determining the proper fee award").

### ii) A Lodestar Analysis Also Supports The Requested Fee

Class Counsel's lodestar as of March 12, 2018 is $194,535. Setareh Decl. ¶ 27. The hours and hourly rates of the timekeepers on this case are as follows:

| Attorney | Bar Date | Hourly Rate | Hours | Lodestar |
|----------|----------|-------------|-------|----------|
| Shaun Setareh | 1999 | $750 | 53.95 | $40,462.50 |
| Thomas Segal | 2002 | $625 | 170.50 | $109,735 |
| Farrah Grant | 2013 | $425 | 96.70 | $41,097.5 |
| Alice Kim | 2013 | $400 | 3.50 | $1400 |
| Stacey Shim | 2015 | $300 | 7.40 | $2200 |

Setareh Decl. ¶ 27. Additional details about the qualifications of these attorneys are set forth in Declaration of Shaun Setareh. Setareh Decl. ¶ 26.

The above rates are within the range of rates approved by courts in Northern and Southern California for complex class actions, including wage-and-hour actions. *See, e.g., Wang v. Chinese Daily News, Inc.,* 2008 U.S. Dist. LEXIS 123824 at 8–9 (C.D. Cal. filed Oct. 3, 2008) (in a wage-and-hour action, approving 2008 rates of up to $800 per hour*), vacated on other grounds*, 132 S. Ct. 74 (2011); *Rutti*, 2012 WL 3151077 at 11 (in a wage-and-hour action, approving 2012 rates of up to $750 per hour); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving 2012 rates of up to $850 per hour); *In re HP Laser Printer Litig.*, 2011 WL 3861703 at 5–6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour); *Perfect 10 v. Giganews Inc.,* 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015) (approving  2015 rates of $750 for an 18 year attorney, $640 for a 12 year attorney, and $640 for a 7 year attorney, and $505 for a 3 year attorney); *Stuart v. RadioShack Corp.*, No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16 (N.D. Cal. Aug. 9, 2010) (finding rates ranging between $600 and $1,000 reasonable; *In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011) (approving hourly rate of $836); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *9 (approving hourly rates up to $1000); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014) (approving hourly rates up to $850;  *Kearney v. American Honda Motor Am.* 2013 U.S. Dist. LEXIS 91636  *24 (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Holloway v. Best Buy Co.*, C-05-5056-PJH (MEJ) (N.D. Cal.) (approving 2011 partner rates of $825 to $700 an hour).

The requested $250,000 fee is only a 1.3 multiplier over the lodestar amount. This is at the low end of the multiplier range typically applied by district courts. *See, e.g., Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *In re TFT-LCD (Flat Panel) Antitrust Litig., 2013 WL*

*1365900,* at *8 (multipliers ranging on average between 2.4 – 2.6); *Pokorny,* 2013 WL 3790896, at *2 (multiplier of 2.2); *see also Milliron v. T-Mobile USA, Inc.,* 423 F. App'x 131, 135 (3d Cir. 2011) (approving district court's use of 2.2 multiplier); *Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier);    (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig*., 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier); *Sobel v. Hertz Corp*., No. 306-CV-00545-LRH-RAM, 2014 WL 5063397, at *10 (D. Nev. Oct. 9, 2014) (multiplier of 2.0).

The various *Bluetooth* factors support application of a positive multiplier in this case. Here, Class Counsel are highly experienced class action litigators and prevailed against a nationally recognized high caliber defense firm. The results obtained for the class are excellent. The case also involved issues of first impression, which were fully briefed in the motion for summary judgment.  Finally, the contingent nature of the action supports an upward adjustment. Therefore, the requested attorneys' fees of $250,000 should be awarded.

### 2.    Plaintiff's Litigation Expenses Should be Reimbursed.

Defendant has agreed to pay Class Counsel's litigation expenses in an amount not to exceed $20,000 as part of the settlement out of the Settlement Amount. (Settlement Agreement ¶ 5.1) Prevailing parties may recover as part of statutory attorney fees "litigation expenses when it is the  prevailing practice in the given community for lawyers to bill those costs separately from their hourly rates." *Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1258 (9th Cir. 2006.) In California, attorneys are reimbursed for out of pocket expenses such as "1) meals, hotels, and transportation; 2) photocopies; 3) postage; 4) filing fees; 5) messenger and overnight delivery; and 6) online legal research." *Johnson v. General Mills, Inc.*, 2013 WL 3213832 *6 (C.D. Cal. 2013.) Here, Plaintiff has incurred $25,122.82 in litigation expenses including mediator fees, travel, postage, Westlaw legal research, mileage and parking, PACER, photocopying, and court filing fees. (Setareh Decl. ¶ 22.) As agreed, Plaintiff seeks an award of $20,000.

**3.     The Settlement Administrator's Expenses Should Be Approved.**

The charges for the Settlement Administrator CPT Group, Inc. are $32,625. (Pikus Decl. ¶ 15.) These costs are reasonable and should be approved. (Setareh Decl. ¶ 23.)

**4.     The Court Should Approve An Incentive Award in The Amount of $2,500.**

Plaintiff requests an incentive award of $2500.   Plaintiff has assisted with the prosecution of the case including  providing counsel information about Defendants' policies and practices, appearing for deposition, assisting counsel in preparing for the mediation,  attending the mediation and reviewing settlement and other case documents.  (Martinez Decl. ¶ 7.) She undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against him. (Martinez Decl. ¶ 8.) The requested incentive award is reasonable and should be approved.

## IV.    CONCLUSION

The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the Court to grant final approval, award the requested attorney fees and litigation expenses, settlement administrator expenses and incentive award.

Respectfully submitted,

SETAREH LAW GROUP

Dated: March 12, 2018            BY___*/s/ Shaun Setareh*_____
                                                     SHAUN SETAREH
                                                     Attorneys for Plaintiff
                                                     ALYSSA BURNTHORNE MARTINEZ